CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division

SAPNA MEHTA (CABN 288238)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7478
    FAX: (415) 436-6748
    sapna.mehta@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BOUTIQUE AIR, INC., <br><br> Defendant. | CASE NO. 25-cv-7201 <br><br> **COMPLAINT** |

The United States of America, on behalf of the Federal Aviation Administration ("FAA"), an operating administration of the U.S. Department of Transportation ("DOT"), brings this action under 49 U.S.C. § 46301 to collect civil penalties against Defendant Boutique Air, Inc. for multiple violations of FAA regulations.

## INTRODUCTION

1. The FAA's mission is to provide the safest, most efficient aerospace system in the world.

2. Safety is a critical component of the FAA's mission, and the DOT and FAA operate an Industry Drug and Alcohol Testing Program to help protect public safety. The Omnibus Transportation Employee Testing Act of 1991, chapter 451 of Title 49 of the U.S. Code, and DOT (49 C.F.R. part 40) and FAA (14 C.F.R. part 120) regulations, require drug and alcohol testing of safety-sensitive

aviation employees. The purpose of these requirements is to help prevent accidents and injuries resulting from the use of prohibited drugs or the misuse of alcohol by employees who perform safety-sensitive functions. Safety-sensitive functions for aviation employees are listed in 14 C.F.R. § 120.105 and 120.215, and include aircraft maintenance or preventive maintenance duties, flight crewmember duties, and ground security coordinator duties.

3. The FAA's Drug Abatement Division oversees the aviation industry's compliance with the drug and alcohol testing law and regulations. It provides guidance to industry members, including sample documentation and policies, to increase the program's effectiveness. It also conducts inspections to ensure compliance and deter prohibited activities.

**PARTIES**

4. Plaintiff the United States of America brings this action on behalf of the FAA seeking a civil penalty for repeated violation of its drug and alcohol testing requirements. The FAA is authorized to regulate the safety and operation of commercial aircraft within the United States pursuant to Title 49 of the United States Code and may assess penalties for non-compliance under Chapter 463 of that title.

5. Defendant Boutique Air, Inc. ("Boutique Air") is an air carrier that operates scheduled and charter flights. Boutique Air is now, and was at all times mentioned herein, the holder of Air Carrier Certificate No. 2B5A106N issued by the FAA under 14 C.F.R. part 119, authorizing Boutique Air to conduct operations under 14 C.F.R. part 135. At the time of the conduct at issue, Boutique Air qualified as a small business within the meaning of 15 U.S.C. § 632 because it had fewer than 1,500 employees. Boutique Air is incorporated in California and maintains its corporate headquarters at 5 Third Street, Suite 925, San Francisco, California 94103.

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

6. This Court has subject matter jurisdiction over this action under 49 U.S.C. §§ 46107(b)(1), 46305; and 28 U.S.C. § 1345. Venue is proper in the Northern District of California under 49 U.S.C. §§ 46107(b) and 28 U.S.C. §§ 1391(b), 1395 because Boutique Air is found in, resides in, does business in, and committed violations in this district, and a substantial part of the events or omissions giving rise to this claim occurred in this district.

7. Assignment to the San Francisco Division or the Oakland Division is appropriate because

a substantial part of the events or omissions giving rise to the claim occurred in San Francisco County.

**BOUTIQUE AIR'S SYSTEMIC NONCOMPLIANCE WITH DRUG AND ALCOHOL TESTING REQUIREMENTS**

8. As an FAA-certified air carrier under 14 C.F.R. part 119 that operates under 14 C.F.R. part 135, Boutique Air is subject to the FAA's drug and alcohol testing requirements set forth in 14 C.F.R. part 120. The FAA's regulations require that an employer's drug and alcohol testing program under 14 C.F.R. part 120 comply with the procedures set forth in the DOT regulations at 49 C.F.R. part 40 for transportation workplace drug and alcohol testing programs.

9. There are different categories of requirements for these programs, including testing, records checks, training, reporting, and recordkeeping requirements. Among those requirements, whenever Boutique Air hires an individual to perform safety-sensitive functions or transfers a non-covered employee into a safety-sensitive position, it is required to perform a drug and alcohol records check under 49 C.F.R. § 40.25.

10. Specifically, Boutique Air is required to obtain an employee's written consent and then request certain drug and alcohol testing information from that employee's previous DOT-regulated employers. The information that must be requested under 49 C.F.R. § 40.25(b) includes (1) alcohol tests with a result of 0.04 or higher alcohol concentration, (2) verified positive drug tests, (3) refusals to be tested (including verified adulterated or substituted drug test results), (4) other violations of DOT agency drug and alcohol testing regulations, and (5) with respect to any employee who violated a DOT drug and alcohol regulation, documentation of that employee's successful completion of DOT return-to-duty requirements (including follow-up tests). Requests must be sent to all of an employee's DOT-regulated employers during the two years before the date of their application for or transfer into a safety-sensitive position.

11. Boutique Air is required to obtain and review this drug and alcohol testing information before an employee performs safety-sensitive functions, if feasible, pursuant to 49 C.F.R. § 40.25(d). If it is not feasible to do so before the employee performs safety-sensitive functions, Boutique Air is required to obtain and review the information as soon as possible.

12. In either scenario, Boutique Air cannot permit an employee to perform safety-sensitive

functions after 30 days from the date on which that employee first performs safety-sensitive functions, unless it obtains or makes and documents a good faith effort to obtain the required information.

13. Pursuant to 49 C.F.R. § 40.25(i), Boutique Air is required to retain its documented efforts to obtain the required information for three years from the date the employee first performed safety-sensitive functions for it.

14. As the holder of an FAA-issued air carrier certificate, Boutique Air is required to obtain and maintain Operations Specifications. At all times mentioned herein, Boutique Air held Operations Specifications certifying that it would comply with the requirements of 14 C.F.R. part 120 and 49 C.F.R. part 40 for its Antidrug and Alcohol Misuse Prevention Program.

15. Boutique Air, however, systematically failed to comply with the drug and alcohol records check requirements for employees newly performing safety-sensitive duties for Boutique Air. Between August 2020 and September 2021, Boutique Air authorized twenty-one employees to perform safety-sensitive functions beyond 30 days from the date on which they first began performing those functions. Boutique Air did so without obtaining, or making and documenting a good faith effort to obtain, the specific drug and alcohol testing information required under 49 C.F.R. § 40.25(b) from all of those employees' DOT-regulated employers during the two years before the date of their applications to Boutique Air.

16. Boutique Air hired R.H. as a mechanic on July 13, 2020. R.H.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to R.H.'s application for employment with Boutique Air. R.H. first performed a safety-sensitive function for Boutique Air on July 24, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on August 26, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on R.H.'s resume within 30 days of the date that R.H. first performed a safety-sensitive function for Boutique Air.

17. Boutique Air hired G.M. as a mechanic on July 13, 2020. G.M.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to G.M.'s application for employment with Boutique Air. G.M. first performed a safety-sensitive function

for Boutique Air on August 7, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on September 10, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on G.M.'s resume within 30 days of the date that G.M. first performed a safety-sensitive function for Boutique Air.

18. Boutique Air hired A.J. as a mechanic on August 10, 2020. A.J.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to A.J.'s application for employment with Boutique Air. A.J. first performed a safety-sensitive function for Boutique Air on August 23, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on September 28, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on A.J.'s resume within 30 days of the date that A.J. first performed a safety-sensitive function for Boutique Air.

19. Boutique Air hired E.B. as a mechanic on September 16, 2020. E.B.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to E.B.'s application for employment with Boutique Air. E.B. first performed a safety-sensitive function for Boutique Air on September 29, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on November 2, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on E.B.'s resume within 30 days of the date that E.B. first performed a safety-sensitive function for Boutique Air.

20. Boutique Air hired A.B. as a mechanic on September 21, 2020. A.B.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to A.B.'s application for employment with Boutique Air. A.B. first performed a safety-sensitive function for Boutique Air on October 7, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on November 7, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on A.B.'s resume within 30 days of the date that A.B. first performed a safety-sensitive function for

Boutique Air.

21. Boutique Air hired K.W. as a mechanic on September 14, 2020. K.W.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to K.W.'s application for employment with Boutique Air. K.W. first performed a safety-sensitive function for Boutique Air on October 4, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on November 8, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on K.W.'s resume within 30 days of the date that K.W. first performed a safety-sensitive function for Boutique Air.

22. Boutique Air hired A.B. as a mechanic on September 29, 2020. A.B.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to A.B.'s application for employment with Boutique Air. A.B. first performed a safety-sensitive function for Boutique Air on October 18, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on November 23, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on A.B.'s resume within 30 days of the date that A.B. first performed a safety-sensitive function for Boutique Air.

23. Boutique Air hired G.R. as a mechanic on October 10, 2020. G.R.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to G.R.'s application for employment with Boutique Air. G.R. first performed a safety-sensitive function for Boutique Air on November 6, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on December 7, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on G.R.'s resume within 30 days of the date that G.R. first performed a safety-sensitive function for Boutique Air.

24. Boutique Air hired A.W. as a mechanic on November 9, 2020. A.W.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to A.W.'s application for employment with Boutique Air. A.W. first performed a safety-sensitive function

for Boutique Air on November 10, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on December 11, 2020. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on A.W.'s resume within 30 days of the date that A.W. first performed a safety-sensitive function for Boutique Air.

25. Boutique Air hired K.C. as a mechanic on October 8, 2020. K.C.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to K.C.'s application for employment with Boutique Air. K.C. first performed a safety-sensitive function for Boutique Air on December 9, 2020, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on January 14, 2021. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on K.C.'s resume within 30 days of the date that K.C. first performed a safety-sensitive function for Boutique Air.

26. Boutique Air hired C.K. as a pilot on January 12, 2021. C.K.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to C.K.'s application for employment with Boutique Air. C.K. first performed a safety-sensitive function for Boutique Air on February 4, 2021, and continued to perform a safety-sensitive function for Boutique Air after 30 days, on March 11, 2021. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on C.K.'s resume within 30 days of the date that C.K. first performed a safety-sensitive function for Boutique Air.

27. Boutique Air hired R.E. as a mechanic on February 15, 2021. R.E.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to R.E.'s application for employment with Boutique Air. R.E. first performed a safety-sensitive function for Boutique Air on March 13, 2021, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on April 13, 2021. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on R.E.'s resume within 30 days of the date that R.E. first performed a safety-sensitive function for Boutique Air.

28. Boutique Air hired N.F. as a mechanic on April 5, 2021. N.F.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to N.F.'s application for employment with Boutique Air. N.F. first performed a safety-sensitive function for Boutique Air on April 5, 2021, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on May 7, 2021. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on N.F.'s resume within 30 days of the date that N.F. first performed a safety-sensitive function for Boutique Air.

29. Boutique Air hired D.J. as a mechanic on March 15, 2021. D.J.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to D.J.'s application for employment with Boutique Air. D.J. first performed a safety-sensitive function for Boutique Air on April 13, 2021, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on May 23, 2021. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on D.J.'s resume within 30 days of the date that D.J. first performed a safety-sensitive function for Boutique Air.

30. Boutique Air hired J.L. as a mechanic on April 26, 2021. J.L.'s resume showed previous employment with at least two DOT-regulated employers within the two-year period prior to J.L.'s application for employment with Boutique Air. J.L. first performed a safety-sensitive function for Boutique Air on April 23, 2021, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on May 31, 2021. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employers on J.L.'s resume within 30 days of the date that J.L. first performed a safety-sensitive function for Boutique Air.

31. Boutique Air hired C.R. as a mechanic on March 22, 2021. C.R.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to C.R.'s application for employment with Boutique Air. C.R. first performed a safety-sensitive function for Boutique Air on April 22, 2021, and continued performing a safety-sensitive function for Boutique Air after 30 days, including on June 8, 2021. Boutique Air's records show no records check, or

1  documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on C.R.'s resume within 30 days of the date that C.R. first performed a safety-sensitive function for Boutique Air.

32.  Boutique Air hired K.H. as a ground security coordinator on April 27, 2021.  K.H.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to K.H.'s application for employment with Boutique Air.  K.H. first performed a safety-sensitive function for Boutique Air on May 19, 2021, and continued performing a safety-sensitive function for Boutique Air after 30 days, including on June 29, 2021.  Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on K.H.'s resume within 30 days of the date that K.H. first performed a safety-sensitive function for Boutique Air.

33.  Boutique Air hired B.M. as a mechanic on June 7, 2021.  B.M.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to B.M.'s application for employment with Boutique Air.  B.M. first performed a safety-sensitive function for Boutique Air on June 8, 2021, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on July 12, 2021.  Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on B.M.'s resume within 30 days of the date that B.M. first performed a safety-sensitive function for Boutique Air.

34.  Boutique Air hired M.L. as a mechanic on June 14, 2021.  M.L.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to M.L.'s application for employment with Boutique Air.  M.L. first performed a safety-sensitive function for Boutique Air on June 26, 2021, and continued performing a safety-sensitive function for Boutique Air after 30 days, including on July 29, 2021.  Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on M.L.'s resume within 30 days of the date that M.L. first performed a safety-sensitive function for Boutique Air.

35.  Boutique Air hired B.M. as a pilot on June 15, 2021.  B.M.'s resume showed previous

employment with at least one DOT-regulated employer within the two-year period prior to B.M.'s application for employment with Boutique Air. B.M. first performed a safety-sensitive function for Boutique Air on July 20, 2021, and continued performing a safety-sensitive function for Boutique Air after 30 days, including on August 25, 2021. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on B.M.'s resume within 30 days of the date that B.M. first performed a safety-sensitive function for Boutique Air.

36. Boutique Air hired J.S. as a mechanic on August 10, 2021. J.S.'s resume showed previous employment with at least one DOT-regulated employer within the two-year period prior to J.S.'s application for employment with Boutique Air. J.S. first performed a safety-sensitive function for Boutique Air on August 25, 2021, and continued to perform a safety-sensitive function for Boutique Air after 30 days, including on September 29, 2021. Boutique Air's records show no records check, or documented good faith effort to conduct the requisite check, with the previous DOT-regulated employer on J.S.'s resume within 30 days of the date that J.S. first performed a safety-sensitive function for Boutique Air.

**THE FAA'S INVESTIGATION AND ISSUANCE OF A CIVIL PENALTY LETTER**

37. The FAA's Drug Abatement Division inspected Boutique Air's drug and alcohol testing program for compliance on October 18, 2021. The FAA issued a report of inspection on May 5, 2022, outlining six issues that its investigation discovered. The third enumerated issue was that Boutique Air allowed specified safety-sensitive employees to continue to perform safety-sensitive functions after 30 days had elapsed without receiving or making a good faith effort to obtain their previous drug and alcohol testing records from previous employers. The FAA requested a written explanation from Boutique Air as to how it would correct the enumerated issues.

38. Boutique Air responded to the FAA's report of inspection on May 18, 2022. As to the third enumerated issue in the FAA's report of inspection, Boutique Air "recognized how each individual lacked a records check and/or an additional check from a previous employer within the required time frame of the records check" and that "30 days had elapsed without making good faith [sic] to obtain the records."

39. Upon review of Boutique Air's response, on December 5, 2022, the FAA issued letters to Boutique Air that closed out some of the issues investigated. However, the FAA advised Boutique Air that the third enumerated issue in the report of inspection still required further investigation.

40. On September 22, 2023, the FAA issued a letter to Boutique Air outlining the FAA's basis for concluding that Boutique Air violated 49 C.F.R. § 40.25(d) on more than twenty occasions and seeking payment of a civil penalty.

41. In response to the FAA's letter, Boutique Air claimed to have documentation of its compliance with 49 C.F.R. § 40.25(d) for six of the employees included in the civil penalty letter. Boutique Air's documentation, however, failed to show that the required records checks had been conducted.

42. Boutique Air has not responded to the FAA's further attempts to address the violations.

43. Boutique Air has not paid any amount in penalty.

## PENALTY CALCULATION

44. The maximum penalty applicable to small businesses for each violation of 49 C.F.R. § 40.25(d) is set forth in 49 U.S.C. § 46301(a)(5). An entity in the scheduled and chartered passenger air transportation industries qualifies as a small business under 49 U.S.C. § 46301(i) if it has fewer than 1,500 employees. 15 U.S.C. § 632; 13 C.F.R. § 121.201.

45. Civil penalties under 49 U.S.C. § 46301(a)(5) are adjusted annually for inflation under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (codified at 49 U.S.C. § 2461 note), and updated amounts are published annually in the Federal Register.

46. The maximum allowed penalty under 49 U.S.C. § 46301(a)(5) for a small business at the time the first violation occurred on August 26, 2020, was $13,669 per violation.

47. The maximum allowed penalty under 49 U.S.C. § 46301(a)(5) for a small business was $13,910 for violations on or after January 11, 2021.

48. The maximum allowed penalty under 49 U.S.C. § 46301(a)(5) for a small business was $14,074 for violations on or after May 3, 2021.

49. The statutory maximum penalty for each of Boutique Air's violations is warranted because Boutique Air has a history of violations related to drug and alcohol testing regulations:

a. By an Order Assessing Civil Penalty dated September 8, 2020, the FAA found that Boutique Air violated 49 C.F.R. § 40.25(d), the same regulation involved in this complaint, in addition to other drug and alcohol testing regulations, and assessed a civil penalty in the amount of $47,500.

b. In a civil penalty letter dated May 12, 2021, the FAA found that Boutique Air violated multiple drug and alcohol testing regulations and calculated civil penalties in the amount of $185,000.

c. By an Order Assessing Civil Penalty dated September 5, 2024, the FAA found that Boutique Air violated 49 C.F.R. § 40.25(d), the same regulation involved in this complaint, in addition to other drug and alcohol testing regulations, and assessed a civil penalty in the amount of $40,000.

50. Moreover, the number of employees—21—for whom Boutique Air failed to conduct records checks is significant.

## CAUSE OF ACTION

51. Plaintiff incorporates by reference paragraphs 1 through 50 above.

52. Boutique Air violated 49 C.F.R. § 40.25, which prohibits Boutique Air from permitting an employee to perform safety-sensitive functions after 30 days from the date on which safety-sensitive functions were first performed without obtaining, or making and documenting a good faith effort to obtain, that employee's drug and alcohol testing information from all previous DOT-regulated employers during the two years before application or transfer.

53. Between August 26, 2020 and September 29, 2021, Boutique Air authorized twenty-one employees to perform safety-sensitive functions beyond 30 days from the date on which they first began performing those functions. Boutique Air did so without obtaining, or making and documenting a good faith effort to obtain, the specific drug and alcohol testing information required under 49 C.F.R. § 40.25(b) from all of those employees' DOT-regulated employers during the two years before the date of their application to Boutique Air.

54. Under 49 U.S.C. § 46301(a)(5), Boutique Air is subject to a civil penalty for each violation.

**RELIEF REQUESTED**

WHEREFORE, for the United States seeks:

a. Judgment in its favor and against Defendant Boutique Air, Inc.;

b. An award of civil penalties to the United States pursuant to 49 U.S.C. § 46301(a)(5) up to the maximum amount allowed by law for each violation of 49 C.F.R. § 40.25(b), totaling $291,417;

c. Costs and interest from the date of entry of judgment; and

d. Such other relief as the Court may deem just and proper.

DATED: August 26, 2025                                       Respectfully submitted,

                                                               CRAIG H. MISSAKIAN
                                                               United States Attorney

                                                               */s/ Sapna Mehta*
                                                               SAPNA MEHTA
                                                               Assistant United States Attorney